IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>vs. )<br>)<br>ADRIAN PETERS )<br>) | Case No. 22 C 50389 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In December 2019, Adrian Peters pled guilty to three counts of production of child pornography in violation of 18 U.S.C. § 2251(a). In December 2020, the Court sentenced him to a twenty-six-year prison term and a life term of supervised release. On appeal, Peters challenged the lifetime term of supervision but not his term of imprisonment. The court of appeals affirmed the lifetime-supervision sentence. *United States v. Peters*, No. 21-1003, 2021 WL 4755159 (7th Cir. 2021). In November 2022, Peters filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court denies his motion for the reasons stated below.

### Background

In 2015, Peters was charged with twelve counts of production of child pornography in violation of 18 U.S.C. 2251(a). Peters, who was twenty to twenty-two years old at the time of his offenses, communicated with multiple minors and persuaded at least seven of them to "engage in sexually explicit conduct for the purpose of recording them." *Peters*, 2022 WL 4755159, at *1. Those individuals ranged from fourteen to seventeen years old, and Peters knew they were underage at the time he

sought to record them engaging in sexually explicit conduct. *Id.* After he was charged and prior to trial, Peters fled the jurisdiction and attempted to seek refugee status in Canada, but he was deported, arrested in New York, and eventually returned to this jurisdiction.

In December 2019, Peters pled guilty to three counts of production of child pornography. In his signed plea agreement, Peters admitted to knowingly using, persuading, inducing, and enticing three victims to engage in sexually explicit conduct for the purposes of having those victims transmit that content to him using the Internet. He also stipulated to having committed the same offense against four other underage victims for purposes of computing his sentence.

In the presentence report, a probation officer calculated a Sentencing Guidelines range of ninety years' imprisonment based on a statutory maximum of thirty years for each violation of section 2251(a). Peters was subject to a mandatory minimum sentence of fifteen years. The probation officer recommended a life term of supervised release and "proposed an extensive set of supervised-release conditions, including substance-abuse and sex-offender treatment, computer and internet monitoring, and restrictions on travel." *Id.*

In addition, the probation officer detailed Peters's background and upbringing in her report. She noted that Peters's parents had divorced when he was two years old and that Peters's stepfather had been physically abusive. The probation officer also mentioned that beginning when Peters was six or eight years old, his father encouraged and directed him to engage in sexual activity with adult women. As relevant to this motion, the presentence report referenced a letter by Dr. Steve Eisenberg, a licensed

clinical professional counselor, stating that Peters had met with him for counseling. The presentence report did not include the letter, but it stated that the letter described Peters's mood and symptoms of anxiety and depression.

Paragraphs 25 to 43 of the presentence report described Peters's conduct relating to the offenses, while paragraphs 44 to 47 described other relevant conduct. In paragraphs 25 to 43, the probation officer stated that two minor victims alleged that Peters sexually assaulted them. The officer also noted that there was no evidence suggesting Peters distributed any of the child pornography that he produced. Paragraphs 44 to 47 referenced police reports stating that while he was between the ages of seventeen and twenty-one, Peters attempted to coerce a fifteen-year-old girl to engage in sexual activity and later sexually assaulted two adult women.

The government submitted a sentencing memorandum seeking a sentence of between 360 and 420 months' imprisonment and a life term of supervised release.

Peters's counsel submitted a sentencing memorandum seeking imposition of the fifteen years mandatory minimum prison term, followed by five years of supervised release. Counsel did not provide the letter from Dr. Eisenberg mentioned in the presentence report, but she included a report from licensed clinical psychologist Dr. Rachel Loftin, who diagnosed Peters with autism spectrum disorder (ASD). Dr. Loftin pointed out that "most people with ASD will never be arrested for a sexual crime and, in fact, are much more likely to be victims than perpetrators[,]" and the "most striking" difference between Peters and other individuals with ASD was "his unusually sexualized childhood." Brief Report of Psychological Consultation ("Loftin Report"), *United States v. Peters*, No. 15 CR 50026, at 8 (dkt. no. 96). Dr. Loftin also concluded that (1) Peters

3

experienced anxiety, (2) the physical abuse and sexualization Peters experienced at the hands of his father and stepfather "left him quite vulnerable to grossly inappropriate social behavior," and (3) Peters "has a skewed perception of social norms surrounding sexuality." *Id.* at 9–10. Nevertheless, Dr. Loftin believed that Peters "has all of the prognosticators of a good response to therapy and is expected to do well with social skills training in adulthood[]" and "with appropriate instruction and treatment, he is capable of learning and developing positive alternatives." *Id.* at 9–10.

At sentencing, defense counsel objected to the allegations regarding sexual assault in paragraphs 44 to 47 of the presentence report. After hearing from both sides on the issue, the Court stated that it was "not comfortable" relying on those allegations without more support, so it declined to consider the allegations in imposing sentence. Transcript of Proceedings, Dec. 17, 2020 ("Sentencing Tr."), 6:21–22. The Court then heard from both sides on the appropriate sentence. Defense counsel stated that Peters was in counseling with Dr. Eisenberg and reported that Dr. Eisenberg believed that Peters is "ready, willing, and able to work on his issues and to reenter society as someone who is no longer a threat to society." *Id.* 39:1–3.

In determining a sentence, the Court considered the factors listed in 18 U.S.C. § 3553(a), taking note of the "extraordinarily serious" nature of Peters's offenses, his autism disorder, and the physical and sexual abuse he experienced as a child. It also recognized that Peters's case differed from, for example, "a case of a 50-year-old having sexual contact with an 8-year-old or an 11-year-old" because "[f]or the most part, most of these incidents involved somebody who was around 20 having sexual contact with somebody who was around 16 or 17." *Id.* 51:1–6. On the other hand, the Court

4

stated that "whatever condition that Mr. Peters has or had that led him to engage in this behavior isn't going to go away . . . you can't snap your fingers and make it go away" and "[t]here is no kind of treatment he is going to get in prison that is going to make it go away."  The Court imposed a life term of supervised release for these reasons.  *Id.* 53:13–20.  In addition, in explaining its decision to require mental health treatment, the Court stated that "therapy or at least [the Court's] understanding is that therapy for people on the autism spectrum is not easy" and "[i]t is a lot more complicated and difficult and long term than that."  *Id.* 53:23–54:4.

On the question of imprisonment, the Court rejected imposing the mandatory minimum sentence because it believed "the conduct is way too severe for that."  The Court also stated, however, that it believed life sentences "are reserved for murder cases, and maybe some other extremely serious cases[.]"  *Id.* 55:13–16.  The Court sentenced Peters to twenty-six years' imprisonment, representing a sixty-four-year downward variance from the Guidelines range.[1]

On appeal, Peters challenged the Court's imposition of a life term of supervised release, but he did not challenge the length of his prison term.  The Seventh Circuit affirmed the supervised release term, rejecting Peters's arguments that the Court "in fact equated a life term of supervised release with a 'default' punishment for a sex offense, and thus procedurally erred by failing to assess his personal history and characteristics."  *Peters*, 2021 WL 4755159, at *2.

---

[1] Although the Guidelines range was life imprisonment based on the total offense level and Peters's criminal history, "the offense carries a 30-year statutory maximum sentence for each count, so the statutory ceiling replaces [the defendant]'s guidelines range."  *United States v. Horton*, 770 F.3d 582, 584 (7th Cir. 2014) (per curiam).

In November 2022, Peters timely filed his section 2255 motion.

## Discussion

When reviewing a motion under 28 U.S.C. § 2255, the Court must hold an evidentiary hearing if the movant alleges facts that, if proven to be true, would entitle him to relief. 28 U.S.C. § 2255(b); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). A hearing is not required, however, "if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

A defendant generally may not raise in a section 2255 motion a claim that was available on direct appeal but that he did not assert. *Bousley v. United States*, 523 U.S. 614, 621–22 (1998). This rule does not apply to ineffective assistance of counsel claims, which "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Because he did not raise his claims on direct appeal, Peters has procedurally defaulted on all of them, with the exception of his ineffective assistance of counsel claims. He therefore cannot pursue those defaulted claims unless he demonstrates cause and prejudice. *Bousley*, 523 U.S. at 622. Ineffective assistance of counsel can constitute cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994). Accordingly, the Court will assess each claim to determine whether ineffective assistance will excuse procedural default and whether Peters is entitled to a hearing on his independent ineffective assistance claims.

If the record shows that a particular underlying claim lacks merit, then counsel was not ineffective in failing to assert that claim. See *Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010); *Fuller v. United States*, 398 F.3d 644, 650–52 (7th Cir. 2005). If a particular underlying claim is meritorious, then his attorney would have been ineffective in failing to assert the claim if "(1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial." *United States v. Hall*, 212 F.3d 1016, 1021 (7th Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984)). The record conclusively shows that Peters's claims lack merit and that neither his trial nor appellate counsel provided ineffective assistance.

**A.    Reasonableness of sentence**

A below-guidelines sentence is "presumptively reasonable against an attack by a defendant claiming that the sentence is too high." *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008). "A defendant can only rebut this presumption of reasonableness 'by showing that the sentence does not comport with the factors outlined in 18 U.S.C. § 3553(a).'" *United States v. Patel*, 921 F.3d 663, 672 (7th Cir. 2019) (internal citation omitted). The Seventh Circuit has noted that "[i]t is hard to conceive of below-range sentences that would be unreasonably high." *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005).

Peters does not challenge the guidelines calculations. Instead he appears to contend that his sentence was unreasonable because (1) the Court considered invalid factors in sentencing and did not sufficiently credit his experts, and (2) there are unwarranted sentencing disparities between his sentence and those imposed upon

similarly situated defendants. The Court addresses each of these arguments in turn.

### 1. Invalid factors

Peters first asserts that the Court erred in concluding that he had nonconsensual sexual relations with the victims. But "[m]inors lack the capacity to consent, and so sexual contact with a minor is always 'without consent.'" *United States v. Rogers*, 587 F.3d 816, 820 (7th Cir. 2009); *see also United States v. Wells*, 843 F.3d 1251, 155 (10th Cir. 2016) ("Further, of course, a minor cannot consent to production of child pornography"); *United States v. Ballinger*, No. 10 CR 30095, 2011 LEXIS 19339 ("Although *United States v. Rogers* addressed sexual contact with a minor, the same reasoning applies here. Minors lack the capacity to consent, and so the production of child pornography is always 'without consent.'"). Peters admitted in his plea agreement to knowingly producing sexually explicit content involving minors, and he concedes in his reply that he engaged in sexual conduct with women who "were not 18 years old and could not legally consent." Def.'s Reply at 12. As a result, it was not erroneous for the Court to conclude that Peters engaged in nonconsensual sexual conduct in producing the sexually explicit materials of his underage victims.

To the extent that Peters contends the Court based the sentence on allegations that he coerced the victims to have sexual relations with him, the Court did not do that. Although sections of the presentence report described Peters allegedly forcing various individuals to engage in sexual activity with him, the Court expressly stated during sentencing that the conduct in question was "not part of the offenses of conviction" and the Court "was not comfortable relying on [those sections] without more." Sentencing Tr. 5:7–11, 6:21–22.

8

There is also no support in the record for Peters's contentions that the Court based the sentence on the proposition that he had a "deviant sexual interest in minors" or had shared the sexually explicit content online. The government argued at sentencing that Peters committed the offenses "because he has a deviant sexual interest in minors," but the Court stated that "it's not possible for [the Court] to know why Mr. Peters did what he did. It is just not possible, frankly, for anybody, but certainly not possible for [the Court]." Sentencing Tr. 41:9–11, 44:2–5. In addressing the government's theory of Peters's motivations, the Court noted:

> The government's take on it, and I wrote it down, it's a quote, "because Mr. Peters has a deviant sexual interest in minors." *Honestly, to me, that just begs the question why. So why does he have a deviant sexual interest in minors?* The explanation that's given by the defense expert is it has something to do with autism. I don't know if that is right or not.
>
> But what I will say and what I think I can say is that some of the things that happened that were done to Mr. Peters when he was growing up, I would have to have blinders on to think it didn't have some effect on him and some impact on what happened here. It doesn't excuse it. It doesn't probably fully explain it, but it can't be ignored.

*Id.* 51:20–52:8 (emphasis added). The Court also specifically rejected the government's argument that Peters's experiences being "extremely sexualized by people around him in a way that was coercive to him" were merely "tiny little things that went wrong.," On this point, the Court stated that "some of these things were not by anybody's stretch of the imagination tiny[.]" *Id.* 52:9–15.

In short, the Court did not impose a sentence because it believed Peters had acted based on deviant sexual interests in minors. The Court also recognized that Peters did not share the sexually explicit material when it stated that "there is no indication that [the material] was traded with anybody." Sentencing Tr. 51:10–11.

9

Peters is correct that the Court concluded his crimes were extraordinarily serious, but there is no merit to his assertion that the lack of victim impact statements suggests the offenses were *not* serious. The Seventh Circuit has noted that child pornography offenses are "quite serious" because "[t]he distribution of child pornography creates a market for its production, which inevitably leads to the abuse of children" and "the dissemination of child pornography . . . 'causes the child victims continuing harm by haunting the children in years to come,'" *United States v. Gross*, 437 F.3d 691, 693 (7th Cir. 2006), and it has concluded that "receipt and possession of child pornography" are similarly serious because the "consumption of child pornography incentivized its creation, causing real harm to the minor victims." *United States v. Niggemann*, 881 F.3d 976, 982 (7th Cir. 2018). Peters's offenses are more serious than distribution or possession offenses because he knowingly persuaded underage victims to produce the pornography. In addition, victim impact statements were not necessary to support a determination that the minor victims suffered harm. Furthermore, the Court also acknowledged that although Peters's crimes were "really quite aggravated and extremely serious," this was not "a case of a 50-year-old having sexual contact with an 8-year-old or an 11-year-old" and "[f]or the most part, most of these incidents involved somebody who was around 20 having sexual contact with somebody who was around 16 or 17." Sentencing Tr. 50:24–25, 51:1–5. The Court considered this and other mitigating factors in imposing a below-guidelines sentence. Peters has offered no support for his assertion that his offenses required an even greater downward variation.

Peters also argues that the Court did not give sufficient deference to the opinion of Dr. Rachel Loftin, who opined that Peters "had all of the prognosticators of a good

10

response to therapy and is expected to do well with social skills training in adulthood" despite his autism spectrum disorder.[2] Loftin Report at 8. Peters asserts that the Court did not properly consider Dr. Loftin's opinion when it stated that "whatever condition that Mr. Peters has or had that led him to engage in this behavior isn't going to go away" and "[t]here is no kind of treatment [Peters] is going to get in prison that is going to make it go away." Sentencing Tr. 53:13–18. The thrust of the Court's comments was that whatever underlying condition may have led Peters to commit the offenses would be difficult to undo or cure, and that prison-based treatment was unlikely to be successful. This is reflected in the Court's comments that "you can't snap your fingers and make it go away" and that "I certainly hope that once Mr. Peters gets out, which he will, that he is able to get effective therapy." Id. 53:16, 21–22. The Court also notes that its description of the challenges of therapy for individuals with autism spectrum disorder was a summary of the issues raised by Dr. Loftin in recommending psychotherapy. The Seventh Circuit concluded similarly when Peters raised this issue on direct appeal, see Peters, 2021 WL 4755159, at *3, and Peters has raised no new arguments on this point in this petition.

For these reasons, there is no support for the proposition that the Court failed to adequately consider Dr. Loftin's report at sentencing.

---

[2] Peters also argues that the Court did not properly defer to the letter by his counselor Dr. Eisenberg, but that letter was not presented to the Court prior to sentencing, and defense counsel referenced it only in passing during the sentencing hearing. It appears that Peters provided the letter for the first time as an exhibit to his reply in this proceeding, and thus the Court could not have deferred to it at sentencing. The Court addresses the substance of Dr. Eisenberg's letter below, in analyzing Peters's ineffective assistance of counsel claim. See Part B.1, infra.

### 2. Sentencing disparity

Next, Peters contends that there is an unwarranted disparity between his sentence and those imposed upon defendants found guilty of similar conduct. The Court disagrees.

"When imposing a sentence, district judges must consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *United States v. Oliver*, 873 F.3d 601, 608 (7th Cir. 2017). But "[section] 3355(a) does not ban all disparities; its concern is only with *unwarranted* disparities[,]" and "[i]t is not enough for a defendant to argue that a few cases from any particular circuit seem to cast doubt on his sentence." *United States v. Newsom*, 428 F.3d 685, 689 (7th Cir. 2005) (emphasis in original). Furthermore, the Seventh Circuit has concluded that because "the statutory penalties and guidelines sentences for producing child pornography" increased in 2007, "[s]entencing statistics that include defendants sentenced prior to these changes therefore have little probative value." *United States v. Noel*, 581 F.3d 490, 501 (7th Cir. 2009) (upholding below-guidelines sentence of eighty years where the defendant was convicted of three counts of production of child pornography and one count of possession of child pornography).

Peters cites to various cases in which other defendants whose crimes he believes were worse than his were sentenced to similar or shorter prison terms. Yet the authority he cites does not support the contention that his sentence, a sixty-four-year downward variance from the statutory maximum that replaces his guidelines recommendation, represents an unwarranted disparity. For example, *United States v. Kauffman*, 940 F.3d 377 (7th Cir. 2017), is not comparable because the defendant in

12

that case pled guilty to two counts of *receiving and possessing* child pornography, while Peters pled guilty to three counts of *producing* child pornography. Similarly, the defendant in *United States v. Henzel*, 668 F.3d 972 (7th Cir. 2012), committed a different offense unrelated to child pornography and received an above-guidelines sentence, and the sentences in *United States v. Newsom*, 428 F.3d 685 (7th Cir. 2005), and *United States v. Schmeilski*, 408 F.3d 917 (7th Cir. 2005), have "little probative value" because they were imposed prior to the increase in statutory penalties and sentences for child pornography in 2007. See *Noel*, 581 F.3d at 501.

The Court need not address every case Peters cites, however, because the Seventh Circuit has held that unwarranted disparities are "already taken into account whenever . . . the sentencing court imposes a prison term *within* the guidelines range," *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012) (emphasis added), and here the Court imposed a sentence *below* the Guidelines range. Peters does not argue that his guidelines calculation was erroneous, but instead asserts in his reply that "[s]urely a sentence of . . . say . . . imprisonment of 18–20 years followed by 20 years of supervised release is more in line with aforementioned case law and corrects the unwarranted sentence disparity[.]" Def.'s Reply at 12. Yet even "[c]hallenging a within-range sentence as disparate is a 'pointless' exercise" if a petitioner "does not dispute that his guidelines range was properly calculated," *Chapman*, 694 F.3d at 916, and the fact that "[t]he court could have imposed an even lower sentence, if, in its discretion such a sentence was appropriate . . . is not a reason to find the administered sentence unreasonable." *United States v. Maulding*, 627 F.3d 285, 288 (7th Cir. 2010). Consequently, there is no basis for the Court to conclude that Peters's below-guidelines

13

sentence represents an unwarranted disparity.

**B.     Ineffective assistance of counsel**

Peters also argues that both his trial and appellate counsel were ineffective. Neither contention has any merit.

   **1.     Trial counsel**

To succeed on a claim that his right to effective assistance of counsel was violated, Peters must show both deficient performance by counsel and prejudice. *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018). Establishing the deficient performance element requires a movant to show that his attorney's performance "fell below an objective standard of reasonableness." *Kirklin v. United States*, 883 F.3d 993, 996 (7th Cir. 2018) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). In doing so, the movant must overcome a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Perrone*, 889 F.3d at 908 (quoting *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009)). To satisfy the prejudice element, a movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kirklin*, 883 F.3d at 996. On an ineffective assistance claim regarding sentencing, the defendant must show a reasonable possibility that his sentence would have been different but for counsel's deficient performance. *See, e.g.*, *Bailey v. United States*, 566 F. App'x 512, 514 (7th Cir. 2014).

Peters appears to contend that his trial counsel was ineffective because she did not (1) argue that Peters's sexual encounters with his victims were consensual, (2) object to paragraphs 27 to 42 of the presentence report, which characterized those

14

sexual encounters as coerced, and (3) submit the previously-referenced letter from Dr. Eisenberg. As discussed previously, however, Peters's victims were minors who could not have consented to the production of sexually explicit content as a matter of law. *See* Part A.1, *supra*, at 3–4. The Court also stated that it would not rely on other parts of the presentence report describing alleged sexual assault by Peters. The Court did so at least in part because that conduct was not part of the offenses of conviction or stipulated conduct. Sentencing Tr. 5:7–6:22. Consequently, the Court's analysis would not have changed even if Peters's trial counsel had argued that he did not commit sexual assault or objected to the paragraphs 27 to 42 of the presentence report, as the Court declined to consider any sexual assault allegations in sentencing Peters for the offense of producing child pornography.

      Similarly, the Court need not decide whether Peters's counsel's failure to introduce the letter from Dr. Eisenberg constitutes deficient performance because it is not prejudicial. The letter—which Peters submitted to the Court as an exhibit to his reply in this proceeding—states that Dr. Eisenberg met with Peters regularly during 2015 and 2016, found "signs and symptoms of some anxiety and depression," concluded that Peters "was inappropriately sexualized at a very inappropriately early age, resulting in inappropriate childhood preoccupations with sexuality that eventually resulted in problematic behaviors with the legal system," and opined that Peters "does not pose a threat to society." Def.'s Reply at 15. Although Peters's trial counsel did not submit the letter itself, the presentence report mentioned it, and defense counsel provided a summary at sentencing when she stated that "in Mr. Eisenberg's opinion, [Peters] is ready, willing, and able to work on his issues and to reenter society as

15

someone who is no longer a threat to society." Sentencing Tr. at 39:1–3. Additionally, the one-page Eisenberg letter largely reiterates the conclusions in Dr. Loftin's more extensive report, most notably that Peters (1) had "anxiety and mood-related issues," (2) was "physically abused and sexualized as a child" and that "left him quite vulnerable to grossly inappropriate social behavior," and (3) "with appropriate instruction and treatment, [Peters] is capable of learning and developing positive alternatives." Loftin Report at 9. The Court took all of this into account in imposing the sentence. In short, the Eisenberg letter thus would not have informed the Court of any new information.

To the extent that Peters argues he would have received a lower sentence had the Court known that Dr. Eisenberg believed he did not pose a threat to society, the Court disagrees. Peters relies on caselaw to the effect that "[c]ourts should not second-guess the expert administrators on matters on which they are better informed," *Mendoza v. Miller*, 779 F.2d 1287, 1297 (7th Cir. 1985) (internal citation omitted), but that line of cases refers to the management of prisons and deference to the judgment of prison administrators. In the sentencing context, a court "is charged with making an independent decision and should not accept the opinion of a psychological expert regarding a defendant's culpability unless it comports with the court's own judgment of the § 3553(a) factors." *United States v. Freeman*, 415 F. App'x. 721, 723 (7th Cir. 2011). In this case, Peters admitted to knowingly inducing minors to engage in producing child pornography, and even Dr. Loftin noted that he is "quite vulnerable to grossly inappropriate social behavior" and "has a skewed perception of social norms surrounding sexuality." Loftin Report at 9, 10. Even accounting for the possibility of treatment, there is no basis to say that Dr. Eisenberg's conclusion that Peters poses no

16

threat to society outweighs the other evidence presented to the Court. The Court concludes that there is no reasonable probability that it would have imposed a lower sentence even if Peters's trial counsel had submitted the Eisenberg letter prior to sentencing.

For the reasons above, the Court finds that Peters has failed to establish ineffective assistance of trial counsel.

### 2. Appellate counsel

The same standard that governs claims for ineffective assistance of trial counsel governs claims challenging the performance of appellate counsel. *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). Thus to succeed on this claim, Peters must show both deficient performance and prejudice. *See id.* "Appellate counsel is not required to present every non-frivolous claim on behalf of her client." *Id.* To demonstrate deficient performance, Peters must show that the argument counsel failed to make was both "obvious" and "clearly stronger" than the issues she did raise on appeal. *Id.* at 898 (quoting *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010)). Making this showing is "generally difficult" because "the comparative strength of two claims is usually debatable." *Id.* (quoting *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013)).

Peters contends that his appellate counsel was ineffective for failing to argue that (1) his twenty-six-year prison sentence was not unreasonable because he did not engage in "nonconsensual sexual acts," and (2) the sentence constituted an unwarranted sentencing disparity compared to other sex offenders. As discussed previously, the child pornography crimes for which Peters was sentenced involved victims who could not have consented because they were minors, and there is no basis

17

to conclude that his below-guidelines sentence represents an unwarranted disparity. *See* Part A, *supra*. Peters's appellate counsel did challenge the imposition of a lifetime term of supervised release on appeal, and neither of the arguments Peters now raises are "obvious" or "clearly stronger" than the challenge to his supervised release term. *Makiel*, 782 F.3d at 897. The Court therefore concludes that Peters has failed to show that his appellate counsel was ineffective.

**C.     Other claims**

Lastly, Peters asserts that his sentence constitutes a miscarriage of justice because it was unreasonable and his trial and appellate counsel were ineffective. None of those arguments have merit for the reasons stated previously. Furthermore, "a sentence that is well below the ceiling imposed by Congress"—which is true of Peters's sentence—cannot "be considered a "miscarriage of justice" that can be collaterally attacked" even where "the judge committed a mistake en route to imposing it." *Hawkins v. United States*, 706 F.3d 820, 824–25 (7th Cir. 2013). Given his below-guidelines sentence and the fact that none of Peters's arguments that the Court erred at sentencing have any merit, there is no legal basis to conclude that Peters's sentence represents a miscarriage of justice.

Peters also moved the Court to preclude the government from civilly committing him, but the present record does not reflect that the government has taken steps to do so. Contrary to Peters's assertions, the government did not seek a lifetime term of imprisonment but instead requested a prison sentence of at most 420 months. Peters's other allegations amount to disagreements with the government's position opposing his section 2255 petition, and he has provided no evidence beyond his own speculation that

18

suggests he is likely to be civilly committed upon completing his term of imprisonment. Any motion to preclude involuntary commitment is thus not ripe. *See Texas v. United States*, 523 U.S. 296, 300 (1988) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.")

## Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment denying Peters's motion under 28 U.S.C. § 2255. The Court declines to issue a certificate of appealability because it can find nothing to suggest that the merits of the claims that it rejected are debatable, capable of different resolution, or deserving of further consideration. *See* 28 U.S.C. §2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *Porter v. Gramley*, 112 F.3d 1308, 1312 (7th Cir. 1997).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 20, 2023